**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>THE JEWISH HOME FOR THE AGED, INC.<br><br>Debtor | Chapter 11<br><br>Case No. 11-30312 (LMW) |

**OBJECTION OF MORRISON MANAGEMENT SPECIALISTS, INC. TO DEBTOR'S MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PROPERTY, (C) THE USE OF THE PROCEEDS OF SUCH SALE TO PAY CERTAIN CLOSING COSTS AND CERTAIN SECURED CREDITORS AND (D) OTHER RELATED RELIEF**

Morrison Management Specialists, Inc. ("Morrison") hereby objects to The Jewish Home for the Aged, Inc.'s (the "Debtor") Motion for an Order under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 6004 and 6006 Authorizing and Approving (A) the Sale of Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases of Property, (C) the Use of the Proceeds of Such Sale to Pay Certain Closing Costs and Certain Secured Creditors and (D) Other Related Relief (the "Sale Motion") and represents as follows:

**INTRODUCTION**[1]

The Debtor proposes a sale and distribution plan that constitutes an improper *sub rosa* plan of reorganization. Under the proposed sale and distribution plan, the Debtor will sell substantially all of its assets without demonstrating adequate marketing or valuation. Then,

---

[1] Any capitalized terms otherwise undefined in the Introduction shall have the meanings ascribed to them in this Objection.

00000.000/541697.1

without properly addressing the allowance and priority of claims, the Debtor would distribute the proceeds to a select few creditors. This process would conclusively determine the rights of all of the Debtor's creditors and wind down the estate without regard to the safeguards mandated by the Bankruptcy Code.

The Debtor proposes to accomplish this reorganization under § 363 of the Bankruptcy Code, circumventing the requirements of plan confirmation under § 1129 and stripping the creditors of its protections. In support of the Sale Motion, the Debtor has submitted no evidence sufficient to allow the Court or the creditors to make an informed judgment about the proposed sale and distribution plan. The Debtor should not be permitted to avail itself of the benefits of reorganization without meeting the requirements of § 1129 and making the disclosures required by § 1125.

Further, as set forth more fully below, the Debtor has not satisfied the requirements of § 363(f) for a sale under § 363(b) and has not provided Morrison with adequate protection for its interest in the property proposed to be sold, as required by § 363(e). For these reasons, Morrison respectfully requests that the Court deny the Debtor's Sale Motion.

## BACKGROUND

1. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 14, 2011, and, on information and belief, has operated its business and managed its assets as a debtor in possession since that time.

2. Morrison is a secured creditor of the Debtor. Morrison holds a secured claim against the Debtor in the amount of $712,033.34, secured by an Open End Mortgage Deed, Assignment of Rents and Leases, Security Agreement and Fixture Filing dated December 15, 2009 (the "Mortgage"), a copy of which is attached to Morrison's proof of claim [Claims

2

Register No. 56]. In its Schedules, the Debtor lists Morrison's claim as liquidated, non-contingent, and not disputed.

3.  On June 8, 2011, the Debtor filed the Sale Motion. By way of the Sale Motion, the Debtor seeks, among other things, approval of an Asset Purchase Agreement (the "APA") for the sale of substantially all of its assets to Advanced Healthcare Properties, LLC ("AHP"), free and clear of all liens, claims, encumbrances, and interests, for a purchase price of $5,650,000 and the assumption of the Debtor's obligations under certain assigned contracts.

4.  Instead of proceeding in a traditional § 363 sale process, with liens to attach to the proceeds pending determination of their allowance and priority (including whether any should be subordinated), the Debtor seeks to immediately distribute the proceeds at closing in conjunction with the proposed sale. Under the proposed distribution plan, the proceeds of the sale would first be used to cover certain costs of closing, with the remainder to be distributed as follows:

(a) $400,000 to be held in escrow for the benefit of the State of Connecticut, Department of Social Services ("DSS") to cover advances made by DSS that it is unable to recover through the recoupment of Medicaid payments;

(b) $250,000 to be held in escrow to cover the Debtor's share of potential environmental remediation and cleanup costs;

(c) $4,221,041.57, plus the value of any and all accrued unpaid interest fees, expenses of any kind, and other "Obligations" as defined in the applicable loan documents to RBS Citizens, National Association f/k/a Citizen Bank of Connecticut f/k/a Citizens Bank ("RBS") in satisfaction of RBS's secured claim;[2]

---

[2] As discussed in ¶16, *infra*, Morrison understands that, in addition to the foregoing, RBS will "gift" in excess of $200,000 to the unsecured creditors.

  (d) $350,000 to First Niagara Bank, N.A. ("First Niagara") in satisfaction of its secured claim;[3]

  (e) $1,250,000, plus the value of any and all accrued and unpaid interest, fees, expenses of any kind, and other obligations due and owing under the applicable loan documents to The Jewish Home Building Fund Corp. ("JHBFC") on account of its secured claim; and

  (f) Any remainder to be held in escrow pending further order of the Court.

  5. The secured claims of all other secured creditors holding liens on the Debtor's assets would be deemed out of the money without the merits of the various secured claims ever being addressed. The secured claims being wiped out would include those of Morrison, Joseph J. Marinan, Jr., The Medicine Centre/Senior Care, LLC, United Illuminating Co., State of Connecticut, Alliance Rehab of Connecticut, LLC, The Southern Connecticut Gas Co., New England Health Care Employees Pension Fund, New England Health Care Employees Welfare Fund, New England Health Care Employees Union District 1199, The Connecticut Nursing Homes Training and Upgrading Fund, and CIT Technology Financing Services, Inc.

### OBJECTION

  6. Morrison objects to the Sale Motion on the grounds that (i) the proposed sale is not supported by adequate evidence of value and the distribution plan constitutes an impermissible *sub rosa* plan of reorganization, (ii) the Debtor has not satisfied the requirements of § 363(f) of the Bankruptcy Code, and (iii) Morrison is entitled to adequate protection under § 363(e).

---

[3] First Niagara's secured claim is asserted in the amount of $472,380.65 [Claims Register No. 17]. First Niagara appears to have accepted a $122,380.65 reduction of its claim.

4

A. **The Proposed Sale Is Not Supported by Adequate Evidence of Value and the Distribution Plan Constitutes an Impermissible *Sub Rosa* Plan of Reorganization**

7. The Debtor does not make any attempt to support the Sale Motion with adequate evidence of the property's value. As set forth more fully below in ¶¶14 and 15, the Debtor has not provided an appraisal or any other information necessary to establish value. In addition, with its attendant distribution plan, the proposal represents an impermissible *sub rosa* plan of reorganization.

8. The Debtor, in conjunction with the secured creditors who stand to benefit from the proposed sale and distribution, seeks to effect a plan of reorganization under the auspices of an asset sale under § 363 of the Bankruptcy Code and circumvent the Bankruptcy Code's requirements for plan confirmation. This is precisely the inequitable result the prohibition on *sub rosa* plans is meant to avoid. *See, e.g., Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007) ("The reason *sub rosa* plans are prohibited is based on a fear that a debtor-in-possession will enter into transactions that will, in effect, 'short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan.'") (quoting *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983)); *Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II, LLC)*, 2011 U.S. Dist. LEXIS 3517, 35 (D. Conn. Jan. 14, 2011) (same).

9. The distribution plan the Debtor seeks to impose would, in conjunction with the proposed sale, conclusively determine the rights of the Debtor's creditors and wind down the estate, thereby performing the functions of a chapter 11 plan. The sale would transfer substantially all of the Debtor's assets from the estate, and the distributions under the proposed

plan would disburse all of the proceeds.[4] The estate would be depleted, all liens on the Debtor's property would be wiped out, and there would be no value left in the estate for unsecured creditors. If the sale closes and the proceeds are distributed as the Debtor requests, the Debtor will have achieved a plan of reorganization without complying with § 1129 of the Bankruptcy Code (which sets forth the requirements for plan confirmation) and affording its creditors the protections thereof, including but not limited to adequate disclosure and the right to vote on such a plan. This is a prototypical *sub rosa* plan. *See Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.)*, 333 B.R. 30, 52 (S.D.N.Y. 2005) (holding that a sale order that "authorized and directed [the sale of] operating assets as well as the direct distribution to creditors of the consideration paid for those assets and the termination of liens and other interests [] clearly constituted an attempt to determine or preempt plan issues in the context of the Section 363(b) sale and was improper to that extent") (rev'd on other grounds). *See also Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997) (contrasting the agreement before the court with the *sub rosa* plan in *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983): "The instant settlement is not a *sub rosa* reorganization of the type disapproved in *Braniff*. It does not dispose of all claims against Cajun, nor does it restrict creditors' right to vote as they deem fit on a proposed reorganization plan. Finally, the

---

[4] The secured claims of RBS, First Niagara, and JHBFC alone (totaling $5,821,041.57, not including any accrued and unpaid interest, fees, expenses, or other obligations owed under the applicable loan documents to RBS and JHBFC, and taking into account the $350,000 cap on the distribution to First Niagara) exceed the purchase price ($5,650,000). Thus, even without accounting for the closing costs, the $400,000 DSS escrow, and the $250,000 environmental escrow, each of which is of a higher priority under the proposed distribution plan than the RBS, First Niagara, and JHBFC claims, it is clear that no proceeds of the sale would be left for the estate.

6

settlement does not dispose of virtually all of Cajun's assets, leaving little prospect or occasion for further reorganization.") (quotations omitted).

10. Paradoxically, the Debtor relies on § 1129 in its attempt to avoid § 1129's provisions. In its bid to satisfy the requirements for a sale free and clear of all liens, claims, encumbrances, and interests under § 363(f), the Debtor argues as follows:

> [A]ll holders of Interests, including the Secured Creditors, could be compelled to accept a money satisfaction of their Interests in legal or equitable proceedings in accordance with Section 363(f)(5) of the Bankruptcy Code. Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to section [sic] 1129(b)(2)(A) of the Bankruptcy Code.

Sale Motion, ¶38.

11. Allowing the proposed sale on this basis would cause § 363's exception to the prohibition on sales free and clear of liens, absent proceeds sufficient to satisfy those liens, to swallow the rule. *See, e.g., Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527, 534 (D.N.J. 2003) (noting that § 363 is an exception to the general rule that "the bankruptcy court should not order property sold free and clear of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate") (quotations omitted).

12. This case exemplifies the concerns raised by the Bankruptcy Appellate Panel for the 9th Circuit in *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*:

> [U]se of the cramdown[5] mechanism to allow a sale free and clear under § 363(f)(5) uses circular reasoning – it sanctions the effect of

---

[5] Section 1129(b)(2)(A) sets forth the requirements for fair and equitable treatment of classes of secured claims under a plan of reorganization when a debtor meets all of the requirements for confirmation under § 1129(a) except § 1129(a)(8). Confirmation of a plan under such circumstances is commonly referred to as a "cramdown."

7

> cramdown without requiring any of § 1129(b)'s substantive and procedural protections…
>
> In addition, this reasoning undercuts the required showing of a separate proceeding. For example, it is correct that § 1129(b)(2) permits a cramdown of a lien to the value of the collateral, but it does so only in the context of plan confirmation. To isolate and separate the cramdown from the checks and balances inherent in the plan process undermines the entire confirmation process, and courts have been leery of using § 363(b) to gut plan confirmation or render it superfluous.

391 B.R. 25, 46 (B.A.P. 9th Cir. 2008). *Clear Channel*'s reasoning is particularly apt in this case. The Debtor, by way of the proposed sale and its attendant distribution plan, is attempting to avail itself of § 1129's benefits without subjecting itself to § 1129's requirements or affording its protections to the creditors.

13. Moreover, the Debtor is attempting to go even further than what § 1129 permits. Under § 1129(b)(2)(A), if property is sold free and clear of liens, <u>the liens attach to the proceeds</u>. 11 U.S.C. § 1129(b)(2)(A)(ii). *See also* Sale Motion, ¶39. A determination of the distribution of the proceeds is then made in accordance with a plan of reorganization and the applicable provisions of the Bankruptcy Code. In this case, under the proposed sale and distribution plan, the secured creditors' liens would not attach to the proceeds. Instead, the proceeds would be distributed according to a hierarchy predetermined by the Debtor and certain creditors. The Debtor should not be permitted to act in this fashion and justify its *sub rosa* plan based on the existence of § 1129(b)(2).

14. The need for the procedural protections of a plan of reorganization in this case is highlighted by the informational deficiencies relating to the proposed sale and distribution plan. With respect to the proposed sale, the Debtor has provided nothing, not even the appraisal required by D. Conn. LBR 6004-1, to support a determination of the value of the property. Nor has the Debtor provided any evidence that the sale is in the best interests of the estate or its

creditors or that the property has been marketed appropriately. Among other things, the Debtor failed to provide any information regarding the following:

    (a)    The marketing process for the property (other than the notice requirements set forth in the June 16, 2011 bidding procedures order [Docket No. 98]).

    (b)    Parties other than the proposed purchaser who are interested in purchasing the property.

    (c)    Professionals, including consultants, brokers, and bankers, retained to assist in the marketing and sale of the property.

    (d)    Appraisals of the property.

    (e)    Potential alternative uses for the property.

    (f)    Any basis for the alleged value of the property other than the purchase price set forth in the APA.

15.    As a result, the creditors and the Court do not have information sufficient to make a judgment about the value of the property, the appropriateness of its sale, or whether the sale falls within the Debtor's sound business judgment. This lack of information regarding the proposed sale is a ground for denying the Sale Motion in its own right. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1066, 1071 (2d Cir. 1983) (determining "to what extent Chapter 11 permits a bankruptcy judge to authorize the sale of an important asset of the bankrupt's estate out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization" and adopting a rule requiring "that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application").

16. The limited information provided by the Debtor is also inadequate with respect to the proposed distribution. Specifically, the Debtor has not demonstrated the extent and validity of the liens on its property. Under normal circumstances, the extent and validity of liens is determined by way of an adversary proceeding. *See* Fed. R. Bankr. P. 7001. In this case, the Debtor is attempting to short circuit that process and impose its own determinations upon the creditors without disclosing information sufficient for the creditors to assess them. This is particularly troubling for allegedly junior secured creditors, because their secured claims might be unjustifiably wiped out. And, to the extent that the distribution plan is based on arrangements that could render a plan unconfirmable, it would be improper to approve it. Indeed, according to ¶17 of the proposed order granting the Motion, the Debtor's sale and distribution plan includes a "gifting" of in excess of $200,000 to unsecured creditors from the proposed distribution to RBS. Such "gifting" is improper. *See Dish Network Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.)*, 634 F.3d 79, 93-101 (2d Cir. 2011) (holding that gifting to junior class of creditors or interest holders violates absolute priority rule).

17. A disclosure statement satisfying the requirements of § 1125 of the Bankruptcy Code, which is a prerequisite to confirmation of a bankruptcy plan, would require disclosures sufficient to make an informed judgment regarding the proposed sale and distribution plan. *See* 11 U.S.C. § 1125(a) ("'adequate information' means information of a kind, and in sufficient detail…that would enable [a hypothetical investor typical of the holders of claims or interests in the case] to make an informed judgment about the plan"). However, the Debtor seeks approval of its sale and distribution plan, which would be functionally equivalent to a plan of reorganization, without disclosing such information.

18.     The Sale Motion should also be denied because, according to the only monthly operating report filed by the Debtor [Docket No. 95], the Debtor achieved a net profit of $366,182 between the filing of the case and April 30, 2011.[6]  In light of the Debtor's profitability (based on the operating report), and the Debtor's failure to submit evidence that it would be unable to reorganize by way of a proper plan of reorganization, the Debtor's effort to avoid the requirements of the Bankruptcy Code is noteworthy.  The Debtor should be required to proceed with confirmation of a plan of reorganization under § 1129.

19.     Because (i) the proposed sale and distribution plan amounts to a *sub rosa* plan, (ii) the approval of the plan and distribution plan would strip the creditors of the protections of §§ 1125 and 1129, and (iii) the Debtor has not made sufficient disclosures or established the necessary evidentiary foundation for the approval of the sale and distribution plan, the Sale Motion should be denied.

**B.      The Debtor Has Not Satisfied the Requirements of § 363(f) of the Bankruptcy Code**

20.     Section 363(f) authorizes the sale of property "free and clear of any interest in such property of an entity other than the estate" under § 363(b) only if one of the following conditions is satisfied:

(1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

---

[6] A copy of the Debtor's Statement of Operations for the period ending April 30 and setting forth the net profit through that period is attached hereto as Exhibit A.

11

>   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21. Here, none of the five conditions of § 363(f) has been satisfied. First, the Debtor has not cited any provision under applicable nonbankruptcy law that would permit a nonbankruptcy sale of Morrison's (or any other secured lender's) collateral free and clear of its lien. Thus, § 363(f)(1) does not apply.

22. Second, § 363(f)(2) does not apply because Morrison has not consented to the sale free and clear of its lien.

23. Third, § 363(f)(3) does not apply because the price at which the assets would be sold is not greater than the aggregate value of the liens on that property. Under § 363(f)(3), a debtor cannot sell its assets free and clear of liens unless the debtor pays the full amount of the liens. *See, e.g., Clear Channel*, 391 B.R. at 40-41; *In re Stroud Wholesale, Inc.*, 47 B.R. 999, 1001-1002 (E.D.N.C. 1985) ("[The 1984 Bankruptcy Code] amendment makes clear Congress' intention that sales free and clear of liens and interests may be justified by (f)3 only if the sale price will exceed the aggregate value of all liens on the property. This interpretation is consistent with the well-established rule that the bankruptcy court should not order the sale of property free and clear of interests and liens unless the court is satisfied that the sale proceeds will fully compensate the secured lienholders and produce some equity for the estate."), *aff'd per curiam*, 983 F.2d 1057 (4th Cir. 1986). *See also In re General Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992).[7]

---

[7] The Debtor incorrectly argues that it satisfies § 363(f)(3) because the aggregate amount of the liens on the property exceeds the property's value. This is precisely the opposite of what § 363(f)(3) requires.

12

24. Fourth, the Debtor does not dispute the validity of Morrison's claim or its lien, and has listed Morrison's secured claim as undisputed on its Schedule D [Docket No. 65]. Section 363(f)(4) is therefore inapplicable.

25. Finally, the Debtor cannot satisfy § 363(f)(5). As discussed in Section A, *supra*, the Debtor attempts to rely on the cramdown provision of § 1129(b) to meet § 363(f)(5)'s requirement that the secured creditors holding liens on the sale property can be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. However, as held in *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, the best-reasoned case on the issue, the mere existence of § 1129(b) does not satisfy § 363(f)(5). 391 B.R. 25, 46 (B.A.P. 9th Cir. 2008) ("Congress did not intend under § 363(f)(5) that nonconsensual confirmation be a type of legal or equitable proceeding to which that paragraph refers. As a result, the availability of cramdown under § 1129(b)(2) is not a legal or equitable proceeding to which § 363(f)(5) is applicable.").

26. Due to the nature of the proposed sale, which would liquidate the Debtor's entire estate, *In re Stroud Wholesale, Inc.*, 47 B.R. 999 (E.D.N.C. 1985), is further instructive in this instance. *Stroud Wholesale* provides guidance to courts on how to apply § 363(f)(5) when a debtor seeks to liquidate its estate rather than reorganize. In *Stroud*, a chapter 7 trustee sought to sell assets free and clear of certain tax liens, relying in part on § 363(f)(5). Citing legislative history, the Court ruled that when a debtor is liquidating, "money satisfaction" under section 363(f)(5) means payment in full:

> Although there is no express language in section 363(f) which would indicate that "money satisfaction" should be interpreted differently depending on whether the sale is in a liquidation or rehabilitation case, such an interpretation is consistent with the purposes of the Code. To the extent that section 363 involves sales in liquidation of the estate and out of the ordinary course of

13

> business, as in this case, it is the successor to sections 70(f) and 70(g) of the Act and to Bankruptcy Rule 606 (superseded in 1978). Rule 606 set forth the type of proceeding which was required to sell property free and clear of interests for which the holder could be compelled to accept a "money satisfaction." The question of when an entity could be compelled to accept a "money satisfaction" was developed in case law. In areas such as downer rights and co-tenancies the case law was inconsistent. In the 1978 amendments to the Code Congress sought to clarify the law in these areas. Except for these few problem areas, the case law regarding the circumstances in which an entity could be compelled to accept a money satisfaction was well settled. That case law is now incorporated into section 363(f)1-(f)4. Thus, if section 363 (f)5 is given the broad reading that the trustee suggests, (f)5 will not only swallow up (f)1-(f)4 but will also significantly change the case law which had developed over the years. There is no indication that Congress intended any such result. Therefore, the only reasonable interpretation of (f)5 is that "money satisfaction" means full satisfaction of creditors' interests in sales in liquidation of the estate.
>
> This court's decision that (f)5 requires full monetary satisfaction of creditors' liens in liquidation cases does not mean that (f)5 would require full monetary satisfaction of creditors' liens in rehabilitation cases. Trustees must be given flexibility in the difficult task of rehabilitating debtors while providing adequate protection for creditors' interests.

*Stroud Wholesale*, 47 B.R. at 1002-1003 (citations omitted).

27.     *Stroud Wholesale* is persuasive under the circumstances of this case. Because the Debtor seeks to fully liquidate its estate by way of a sale under § 363(b) of the Bankruptcy Code rather than seek to confirm a plan of reorganization, § 363(f)(5) is not satisfied because Morrison's lien, as well as the liens of other secured creditors, will not be paid in full. For this and the foregoing reasons, the Debtor has not met the requirements of § 363(f), and the sale should not be approved.

**C.     Morrison Is Entitled to Adequate Protection Under § 363(e) of the Bankruptcy Code**

28.    Section 363(e) provides as follows:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). Morrison holds an undisputed lien on the property the Debtor proposes to sell. It is therefore entitled to adequate protection of its interest in the property under §363(e). Due to the inadequate information provided by the Debtor with respect to the secured creditors' liens, including those allegedly of a higher priority than Morrison's, a determination of Morrison's interest cannot be made at this time. Morrison should therefore be granted adequate protection for the full face amount of its secured claim under § 363(e). Because neither the APA nor the proposed order submitted with the Sale Motion provides such protection, the Sale Motion should be denied.

(remainder of page left blank intentionally)

**CONCLUSION**

Based upon the foregoing, Morrison respectfully requests that the Court sustain its objection, deny the Sale Motion, and requests such other and further relief as the Court deems just and proper.

Dated at Hartford, Connecticut this 7th day of July, 2011.

>Respectfully submitted,
>
>MORRISON MANAGEMENT SPECIALISTS, INC.
>
>
>By:   /s/ Jon P. Newton
>      Jon P. Newton
>      Federal Bar No. ct03376
>      Reid and Riege, P.C.
>      One Financial Plaza
>      755 Main Street, 21st Floor
>      Hartford, CT  06103
>      Tel: 860. 278.1150
>      Fax: 860.240.1002
>      Email:  jnewton@rrlawpc.com
>
>      Carol A. Felicetta
>      Federal Bar No. ct07929
>      Reid and Riege, P.C.
>      195 Church Street
>      New Haven, CT  06510
>      Tel:  203.777.8008
>      Fax:  203.777.6304
>      Email:  cfelicetta@rrlawpc.com
>
>      AND
>
>      Andrew H. Sherman
>      George R. Hirsch
>      Lucas F. Hammonds
>      Sills Cummis & Gross, P.C.
>      One Riverfront Plaza
>      Newark, NJ  07102
>      Tel.: 973.643.7000
>      Fax: 973.643.6500