UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:                                           :        CHAPTER 11
                                                 :
THE JEWISH HOME FOR THE AGED, INC.,              :
                                                 :        CASE NO: 11-30312 (LMW)
                                                 :
                          Debtor.                :        JULY 7, 2011


**OBJECTION OF THE UNITED ILLUMINATING COMPANY TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING: (A) THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PROPERTY, (C) THE USE OF THE PROCEEDS OF SUCH SALE TO PAY CERTAIN CLOSING COSTS AND CERTAIN SECURED CREDITORS, AND (D) OTHER RELATED RELIEF**

The United Illuminating Company ("UI"), by and through its undersigned counsel, hereby objects to Motion For An Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 6004 and 6006 Authorizing And Approving (A) The Sale Of Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Of Property, (C) The Use Of The Proceeds Of Such Sale To Pay Certain Closing Costs And Certain Secured Creditors And (D) Other Related Relief (the "Sale Motion") which was filed by the debtor, The Jewish Home For The Aged, Inc. (the "Debtor"). UI objects to the Sale Motion and respectfully requests that this Court deny or defer approval of the Sale Motion for the reasons set forth below.

Preface:   UI is a New Haven based regional electrical distribution company. UI is engaged in the purchase, transmission, distribution and sale of electrical and other services to

83564718.4

residential, commercial and industrial customers in the Greater New Haven area. UI is an electrical utility subject to regulation by the State of Connecticut DPUC.

For and on account of electrical utility services provided to the Debtor, UI holds a secured claim for services in excess of $1.1 million. (See Proof of Claim). UI has heretofore been patient with and supportive of the Debtor's prepetition efforts to reorganize or sell and has worked with the Debtor's management to facilitate a bridge to a sale, which the Debtor previously posited would yield $6 to $8+ million. That objective and promise of the Debtor has ostensibly failed. The Debtor's efforts to effectuate a sale pursuant to Section 363 falls disappointedly short as a matter of process and value. While the Jewish Home should be preserved and its residents protected, a closed process, with a prewritten conclusion, and a depressed, confiscatory sale price are not consistent with sound bankruptcy or good public policy.

Without a higher sale price and a plan-like process to distribute value to all constituents, this sale offends common sensibilities and bankruptcy reorganization policy.

**I.     The Sale Motion Fails to Maximize Value to All Creditors.**

1.      Under 11 U.S.C. § 1107(a), "a debtor in possession . . . . shall perform all the functions and duties . . . . of a trustee serving in a case under this chapter." "The Supreme Court has indicated that 'the debtor, though left in possession by the judge, does not operate [the business] as it did before the filing of the petition, unfettered and without restraint.' Rather, '[a] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit.'" In re E. Paul Kovacs & Co., 16 B.R. 203, 205 (Bankr. D. Conn. 1981)(internal citations omitted).

2. Under the Bankruptcy Code, the debtor-in-possession serves in place of the trustee and must seek to maximize the value of the assets of the Chapter 11 estate. Carroll v. Rafael Galleries, Inc. (In re Altman), 254 B.R. 509, 515 (D. Conn. 2000); see also Jackson v. Levy, 2000 U.S. Dist. LEXIS 825, No. 98 Civ. 8890(WHP), 2000 WL 124822, at *6 (S.D.N.Y. Feb. 2, 2000) ("[A] debtor-in-possession's fiduciary obligation to its creditors includes refraining from acting in a manner that could damage the estate or waste its assets").

3. The assets here are admittedly complex, fragile and not easily marketed. Notwithstanding that the Debtor has previously urged an asset valuation in excess of $8 million, it now appears willing to surrender its assets for less than liquidation value in order to facilitate what is expedient.

4. The Debtor's surrender of its assets is without a tenable independent expert explanation of the current valuation of these assets, and follows a truncated and tightly structured Section 363 sale protocol which has assured no meaningful competition or fair and open process calculated to maximize value. No one buys a nursing home, does due diligence and negotiates a collective bargaining agreement and regulatory issues in the compressed time frame allotted by the Debtor for this sale. The inevitable depression of value of these assets appears to be the result of flawed process, flawed execution and undue focus on one Buyer.

**II. The Sale Motion Contemplates a Sale to a De Facto Insider that Deserves a Higher Degree of Scrutiny.**

5. The path of this sale has effectively made the Buyer a person in control of the Debtor. 11 U.S.C. § 101(31)(B)(iii). A bankruptcy court should apply heightened scrutiny to transactions that involve a fiduciary or insider. Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.), 211 B.R. 813, 823 (W.D. Pa. 1997)

("Insider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoints of the Corporation and those with interests therein."); see also In re Bidermann Indus. U.S.A., Inc., 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) ("sales to fiduciaries in chapter 11 cases . . . are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse.").

6. Specifically, Section 363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse. In re Tidal Constr. Co., 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009). Such scrutiny requires: (1) that, at the very least, the proposed purchase price be the lesser of an acceptable appraised value or the tax assessment value, and (2) that the property must have been offered to the public in some form. In the absence of these two elements, the Court should not approve an insider sale. Id.

7. The Buyer here has been embedded in and in control of the dynamics of this disposition for nearly a year by virtue of the prolonged and pre-emptive purchase option it obtained for little consideration. The proposed Buyer has not even signed the Purchase Agreement and is the stalking horse!

8. On these facts, the Court must examine the transaction closely and exercise a high level of scrutiny before the Court can find that the proposed sale is for a fair price to a good faith Buyer.

9. Without an expert valuation of the assets and an explanation in the Record for the 'drag' of this process, the Debtor cannot satisfy its burden of proof for approval of the proposed sale.

### III. The Sale Motion Likely Will Result in Use of UI's (and Other Secured Creditors') Cash Collateral Without Consent or Adequate Protection.

10. UI is a secured creditor of the Debtor by virtue of its lien on the Debtor's assets. On information and belief, approval of the Sale Motion may result in UI's (or others') cash collateral being used to pay legal fees, other costs and to set escrows or reserves without adequate protection to UI or other secured party creditors. As the use and allocation of sale proceeds are less than clear, the onus is again on the Debtor to justify its use of cash collateral consistent with the Bankruptcy Code.

11. Section 363(c)(2) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession:

> may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). UI does not consent to the use of its cash collateral proceeds of sale by the Debtor. It is not clear that all other secured creditors consent.

12. Accordingly, the Debtor may not use UI's cash collateral unless, and until, at a minimum, it complies with Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property to be used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

13. Furthermore, the Debtor has not demonstrated that UI's interests are being adequately protected under Section 361 of the Bankruptcy Code. Section 361 of the Bankruptcy Code provides, in relevant part:

> When adequate protection is required under section . . . 363 . . ., such adequate protection may be provided by –
> (1) requiring the [debtor in possession] to make a cash payment or periodic cash payments to such entity . . .
> (2) providing such entity an additional or replacement lien . . .
> (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

14. Neither the Debtor, the Buyer, nor the Senior Lien Creditors may properly use or allocate to the costs of the closing of this transaction the proceeds of sale that may be the collateral of other creditors, without the aforesaid consent or protections. Further, a detailed delineation of the proposed disbursement of proceeds to bona fide lienholders is appropriate and necessary to understand this transaction.

**IV.    The Sale is Essentially for Benefit of the Senior Lien Creditors and Fails To Adequately Serve Bankruptcy Policy.**

15. A principal goal of the reorganization provisions of Chapter 11 is to benefit the creditors of the debtor by preserving going-concern values and thereby enhancing the amounts recovered by all creditors. In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 373 (5th Cir. 1987). "The secured creditor benefits from a successful reorganization because its secured claim is valued on a going-concern basis in connection with a plan of reorganization, and the secured creditor is not compelled to liquidate its collateral at forced-sale prices." Id.

16. However, the creditor constituents do not benefit when a debtor opts to sell substantially all of its assets outside of a plan of reorganization for 'fire sale' value and leaves no recovery for others.

17. This sale is nothing more than an expedient conduit to monetize the Senior Lienholders' positions and serves no overall bankruptcy purpose. When considering whether to allow the Senior Lienholders to avail themselves of the bankruptcy process to effectuate a sale, the Court should consider the Senior Lienholders' ostensible inability or unwillingness to 'pay the price' of the Chapter 11 process. While not embodied in current decisional law, the policy and practice in such Chapter 11s favors a sale process that satisfies administrative and priority claims and leaves a modest dividend on the table for creditors.

**V.     The Debtor Has Not Established The Required Elements For A Sale Outside Of The Ordinary Course Of Business under <u>Lionel</u>.**

18. Section 363(b)(1) of the Bankruptcy Code provides as follows: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

19. In addition to the requirements of notice and a hearing, the Second Circuit Court of Appeals has determined that "there must be some articulated business justification, other than appeasement of major creditors, for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b)." <u>In re The Lionel Corporation</u>, 722 F.2d 1063, 1070 (2d Cir. 1983).

20. In determining whether there is a "good business reason" for a sale of property outside the ordinary course of business, the <u>Lionel</u> Court cautioned that a bankruptcy judge "must not blindly follow the hue and cry of the most vocal special interest group; rather, he should

consider all salient factors pertaining to the proceeding, and, accordingly, act to further the diverse interests of the debtor, creditor and equity holders, alike." 722 F.2d at 1071.  The relevant factors that the bankruptcy judge should consider include the following: "the proportionate value of the assets to the estate as a whole, the amount of the elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisal of the property, which of the alternatives of use, sale or lease the proposal envisions, and, most importantly perhaps, whether the asset is increasing or decreasing in value." Id.

21.     In addition to establishing a "good business reason" for the sale, the Debtor also must demonstrate that "(1) notice has been given to all creditors and interested parties; (2) the purchaser is proceeding in good faith; and (3) the sale contemplates a fair and reasonable price." In re Betty Owens Schools, Inc., 1997 U.S. Dist. LEXIS 5877, *12 (S.D.N.Y. Apr. 16, 1997), citing In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

22.     When, however, the Court considers the various factors set forth by the Lionel Court, it is clear that the Debtor has not met and cannot meet its burden of demonstrating a "good business reason" for the sale.  Rather than present facts and evidence to justify the proposed sale, the Debtor presents nothing more than conclusory statement, bereft of valuations and expert support and manifestly lacking in adequate procedural protections, disclosures and service to bankruptcy priorities and policy.

23.     Only five months have elapsed since the Debtor filed its petition.  It is unclear whether a plan of reorganization is likely to be proposed in the near future.  However, if this Court

allows the Debtor's proposed fire sale to go forward, a plan of reorganization with a meaningful recovery will be impossible because the estate will have already liquidated its most substantial asset, without meaningful opportunity to reorganize, recapitalize, joint venture or liquidate in a more orderly fashion.  Lastly, the Debtor has not shown or alleged that the assets proposed to be sold are diminishing in value (other than by its long engagement to the embedded Buyer).  As the Lionel court indicated, this last factor is perhaps the most important and fatal.

24.     It is not clear why the Debtor believes it is necessary to sell substantially all of the assets of the estate without the proper protections of a reorganization plan or a substantive equivalent.[1]  As the Court noted in In re Temp Technology Corp., 202 B.R. 363, 365 (Bank. Del. 1996), in a Chapter 11 case, "a debtor must ordinarily obtain court confirmation of a plan of reorganization before selling substantially all of its assets."  Such protections include, for instance, § 1125's requirement of the filing of a disclosure statement and a hearing before the court to consider the adequacy of the disclosure statement and § 1128's requirement for a confirmation hearing and confirmation of the plan of reorganization only if, among other things, each holder of a claim or interest in an impaired class either accepts the plan or will receive value that is not less than what that holder would have received under a Chapter 7 liquidation. 11 U.S.C. §§ 1125, 1128; In re Temp Technology Corp., 202 B.R. at 366.  "[A] debtor in Chapter 11 cannot use § 363(b) to sidestep the protection creditors have when it comes time to confirm a plan of reorganization." In re Continental Airlines, Inc., 780 F.2d 1223, 128 (5th Cir. 1986).

---

[1] Some courts have required minidisclosure statements to address the information deficiencies in an expedited sale process.  Judge Krechevsky initiated such a practice in the 1990s upon the urgings of creditors' committees.

25. Here, the Debtor is attempting to circumvent the safeguards that this Court and the Bankruptcy Code would ordinarily afford to the unsecured creditors in a Chapter 11 reorganization. That strategy has served to preempt any meaningful disclosures, negotiation or alternatives. As the <u>Lionel</u> court indicated, "appeasement of major creditors" is not a good business reason for selling property of the estate outside of the ordinary course of business. 722 F.2d at 1070. Here, the Debtor has not articulated any good business reason for selling substantially all of the assets of the estate at this time and in this moribund process. The urgency here stems from the self-fulfilling prophecy of a defective sale process.

26. Further, the Debtor has pursued this path without satisfying its fiduciary duty to make meaningful and material disclosures to all creditors as to the impact of this sale. Only the Debtor, a fiduciary, has the intimate knowledge of material facts and resources to inform its constituents.[2] The Sale Motion fails to speak to the appraised value of the assets sold, assets retained, liens on such assets, the amount, bona fides, and validity of lien claims, the allocation of sale proceeds and adequate protection, the existence of priority, super priority and administrative claims and the likely outcome of this Chapter 11. A critical attribute of a healthy bankruptcy process is transparency. <u>The starting point for all bankruptcy transactions is a proper assessment of value</u>. Thereafter, a <u>full and fair</u> auction process is the litmus test for the value produced in a sale. The process here is a veiled, closed process, supported by conclusory statements and self-created urgencies.

27. This Section 363 sale process is hardly what the Second Circuit contemplated when it rendered the <u>Lionel</u> decision and what fiduciary duties require. The timing, the Buyer bias, the

---

[2] See footnote 1.

lack of valuation and material disclosures each infringe upon fundamental Section 1129 rights of creditors. Section 363 was not intended to allow impermissible sub rosa plans to supercede principles of fairness. See In re Gulf Coast Oil Corp., 2009 WL 361741 (Bank. S.D. Tex. 2009).

28. If the Bankruptcy Court concludes that the 'carefully crafted scheme' of the Chapter 11 plan process is offended, as here, the sale should only be approved if the proponents fashion appropriate protective measures modeled upon those attendant in a reorganization plan.

**VI.  UI Has Not Consented to the 363 Sale and Has Not Been Provided Adequate Protection.**

29. The Debtor has made no showing and is unable to demonstrate that, absent UI's consent, Section 363(f) would allow it to sell its assets free and clear of UI's junior lien. Clear Channel Outdoor, Inc. v. Knupfer, 391 B.R. 25 (9th Cir. BAP 2008), reinterpreted in In re Jolan Inc., 403 B.R. 866 (Bankr W.D. Wash. Apr. 30, 2009) holding in part:

(1) Section 363(f)(3) only permits a sale free and clear of junior liens if the price paid is equal to or greater than the aggregate amount of all liens held against the property; and

(2) Section 363(f)(5) only permits a sale free and clear of junior liens if a legal or equitable proceeding could force the junior lienholder to accept a money judgment, but that proceedings such as a cram down chapter 11 plan cannot qualify as such legal or equitable proceedings.

Compare, In re Becker Industries Corp., 63 B.R. 474 (Bankr. S.D.N.Y. 1986).

30. As currently advanced in the Sale Motion, there appears to be no likely proceeds to which UI's lien can attach; there is no valuation to support the evisceration of its lien; and no demonstrably legal or equitable process which would do so under Connecticut law for less than fair value. Accordingly, the sale may not proceed without junior lienholders' consent or a consensus resolution.

**VII.    The Proposed Sale Order Overreaches, Contains Findings and Rulings Beyond the Record, the Authority and Custom of this Court and Due Process.**

The Proposed Sale Order contains a wide variety of findings and rulings that are not the usual custom in Section 363 sales in this District.  These proposed findings and rulings are bereft of support in the Record, and overreaching as a matter of due process and jurisdictional authority.  That a Court cannot proceed to make findings without evidentiary support is a fundamental premise of jurisprudence.  That a Bankruptcy Court should proceed guardedly with proposed overreaching orders (that are not supported by proper procedural process and extend beyond 'core proceedings' under Section 157(b)(1) and Article III of the United States Constitution) is critical.  The United States Supreme Court has recently reiterated the limits of these core powers and warned on the limits of bankruptcy court intrusions on state law issues (particularly tort claims).  <u>Stern v. Marshal</u>, 564 U.S. (2011).  Here, the Debtor's overreaching order is manifest in efforts to bind governmental authorities, present and future tort claimants and to enjoin them without due process, compliance with FRCP 65, or the jurisdiction and authority of this Court.  These excessive and unfounded findings and rulings must be rejected.  The proposed findings also include matters of successor liability, fair consideration, injunctions, the scope of free and clear orders; all without an evidentiary record or jurisdictional underpinnings.  (See Proposed Order).

Finally, a record, based upon expert testimony, and citation of legal authority is requisite for findings that the consideration of this Sale Motion is fair and that Lienors may be compelled to prepare and deliver Releases of Liens without fair compensation for the liens or their legal fees.

For all of the foregoing reasons, this Court should deny or defer approval of the Sale Motion.

       Respectfully submitted,

       THE UNITED ILLUMINATING COMPANY


       By: _____
        James J. Tancredi, ct06819
        Day Pitney LLP
        242 Trumbull Street
        Hartford, CT 06103
        (860) 275-0100
        Its Attorneys