## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| THE JEWISH HOME FOR THE AGED, INC. | : | CASE NO. 11-30312(LMW) |
| | : | |
| Debtor. | : | |
| _____ | : | |
| THE JEWISH HOME FOR THE AGED, INC. | : | |
| | : | |
| Movant, | : | |
| VS. | : | |
| | : | |
| STATE OF CONNECTICUT DEPARTMENTS OF | : | |
| SOCIAL SERVICES, REVENUE SERVICES AND | : | |
| LABOR, RBS CITIZENS, NATIONAL | : | |
| ASSOCIATION, THE JEWISH HOME | : | |
| BUILDING FUND CORP., FIRST NIAGARA | : | |
| BANK, N.A. AS SUCCESSOR IN INTEREST TO | : | |
| NEW ALLIANCE BANK, GREATER NEW | : | |
| HAVEN WATER POLLUTION CONTROL | : | |
| AUTHORITY, JOSEPH J. MARINAN, JR. THE | : | |
| MEDICINE CENTRE/SENIOR CARE, LLC, | : | |
| UNITED ILLUMINATING CO., STATE OF | : | |
| CONNECTICUT, ALLIANCE REHAB OF | : | |
| CONNECTICUT, LLC, THE SOUTHERN | : | |
| CONNECTICUT GAS CO., MORRISON | : | |
| MANAGEMENT SPECIALISTS, INC., NEW | : | |
| ENGLAND HEALTH CARE EMPLOYEE | : | |
| PENSION FUND, NEW ENGLAND HEALTH | : | |
| CARE EMPLOYEES WELFARE FUND, NEW | : | |
| ENGLAND HEALTH CARE EMPLOYEES | : | |
| UNION DISTRICT 1199, THE CONNECTICUT | : | |
| NURSING HOMES TRAINING AND | : | |
| UPGRADING FUND, CITY OF NEW HAVEN, | : | |
| REGIONAL WATER AUTHORITY, THE CIT | : | |
| GROUP/EQUIPMENT FINANCING, INC., | : | |
| CIT TECHNOLOGY FINANCING SERVICES, | : | |
| INC., ECOLAB, INC., TECHNICAL GAS | : | |
| PRODUCTS, LLC, NESTLÉ HEALTHCARE | : | |
| NUTRITION, INC. | : | |
| | : | |
| Respondents. | : | RE: ECF NO. 86 |
| _____ | : | |

**ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 6004
AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF ASSETS,**

**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN EXECUTORY CONTRACT AND (C) THE USE OF THE PROCEEDS OF SUCH SALE TO PAY CERTAIN CLOSING COSTS AND CERTAIN SECURED CREDITORS**

Upon the motion (the "Motion")[1] of The Jewish Home for the Aged, Inc., as debtor and debtor-in-possession (the "Debtor"), for an order, under Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 6004 and 6006, authorizing and approving the proposed sale of substantially all of the Assets, as that term is defined in the Purchase Agreement (defined below) (the "Purchased Assets") of the Debtor to Advanced Healthcare Properties, LLC, a Connecticut limited liability company (the "Purchaser"), pursuant to that certain Asset Purchase Agreement, dated as of June 15, 2011, a copy of which is attached hereto as *Exhibit 1* (the "Purchase Agreement"), and authorizing the assumption by the Debtor and the assignment to Purchaser of that certain one of the Debtor's executory contracts which Purchaser explicitly designated for assignment to it; the Court having considered the Motion and the Purchase Agreement, the objections thereto, the testimony elicited and the statements of counsel on the record at the hearing on July 13, 2011 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its bankruptcy estate, its creditors and other parties-in-interest; and after due deliberation and good cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[2]

**A.    Jurisdiction and Venue.** This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.
[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

**B.**   <u>Statutory Predicates.</u> The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 6004 and 6006.

**C.**   <u>Notice.</u> In accordance with the Order (A) Scheduling Hearing On Approval of Asset Sale, (B) Approving Bidding Procedures And Break Up Fee and (C) Approving Form and Manner of Notice of Sale and Bidding Procedures ("Bidding Procedures Order"), and as evidenced by the certificate of service and supplemental certificate of service filed with this Court and based upon the representations of counsel at the Sale Hearing: (i) due, proper, timely, and sufficient notice of the Motion, the sale process as provided for in the Bidding Procedures Order, the Sale Hearing and the transactions set forth in the Purchase Agreement (the "<u>Transaction</u>") has been provided in accordance with Bankruptcy Code sections 105(a) and 363 and Bankruptcy Rules 2002, 6004, 6006 and 9014; and (ii) no other or further notice of the Motion, the Sale Hearing or the Transaction is or shall be required.

**D.**   <u>Opportunity to Object.</u> A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given to all interested persons and entities, including the following: (i) the Office of the United States Trustee; (ii) counsel for the Purchaser; (iii) the entities known to the Debtor to have expressed a serious interest in pursuing a merger or acquisition transaction regarding the Debtor or substantially all of its assets during the past twelve (12) months; (iv) all entities known to hold, or to have asserted, any lien, claim, encumbrance or other property interest in or upon any of the Assets, including all persons and entities named in the caption of the Motion or shown on Debtor's certificate or supplemental certificate of service and all persons and entities scheduled in the

Debtor's Schedules of Assets and Liabilities as secured creditors, whether or not disputed, or as parties to leases with the Debtor, including CIT; (v) all of the Debtor's creditors, including all creditors or alleged creditors who are listed on the Debtor's matrix of creditors, who are scheduled by the Debtor in its schedules of liabilities or who have filed proofs of claim; (vi) the Internal Revenue Service, all applicable state taxing authorities, including, but not limited to, the Department of Revenue Services and GB&S, Trustee; (vii)  the Pension Benefit Guaranty Corporation and each of the pension funds for current or former employees of the Debtor, including those pension funds named in the Debtor's Statement of Financial Affairs; (viii) all entities who have filed notices of appearance and/or requests for service of papers in this case; (ix) the United States and Connecticut Departments of Labor; (x) the United States Environmental Protection Agency and the Connecticut Department of Environmental Protection; (xi) the Center for Medicare and Medicaid Services of the United States Department of Health and Human Services; (xii) the Connecticut Departments of Public Health and of Social Services; (xiii) the National Labor Relations Board; (xiv) any collective bargaining representative of Debtor's employees; (xv) the New England Health Care Employees Welfare Fund; (xvi) the New England Health Care Employees Pension Fund; (xvii) the New England Health Care Employees Training Fund; (xviii) the Connecticut Department of Labor, (xviv) the federal Department of Labor, (xx) the Connecticut Workers Compensation Commission, (xxi) the Occupational Safety and Health Administration, (xxii) the Office of Federal Contract Compliance Programs, (xxiii) all known plaintiffs in litigation against the Debtor, including George Mariamma Parayakatu, Suzzanne Ransom, Nita Freeman and Richard Bortolot and/or the conservator of his estate, and all other persons who have commenced, asserted or filed complaints, suits, charges, administrative proceedings, causes of

action, petitions, requests for injunctive relief and other equitable and/or extraordinary relief and remedies, counterclaims, arbitrations, grievances or other similar matters against the Debtor or who have suffered or incurred injuries or damages or been the subject of incidents or occurrences which are reflected in the Debtor's incident or occurrence reports or logs, however denominated other than current residents of the Debtor's nursing home; and (xxiv) all current and former employees of the Debtor who were employed by the Debtor at any time on or after August 1, 2007.

 **E.** **Authority.** The Debtor has full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate the transactions contemplated therein.

 **F.** **Sale in Best Interests.** Good and sufficient reasons for approval of the Purchase Agreement and the Transaction have been articulated, and the relief requested in the Motion and consummation of the Transaction are in the best interests of the Debtor, its estate, its creditors, and other parties in interest.

 **G.** **Business Justification.** The Debtor has demonstrated both (i) good and sufficient business purposes and (ii) compelling circumstances for the Transaction outside the ordinary course of business under Bankruptcy Code section 363(b) before confirmation of a plan of reorganization in that, among other things, the immediate consummation of the Transaction with the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate. Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummating the Transaction.

 **H.** **Arm's-Length Sale.** The Purchase Agreement was negotiated, proposed and

entered into by the Debtor and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code section 101. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person, and the purchase price was not controlled by any agreement among bidders.

I.      **Good Faith Purchaser.** The Purchaser is a good faith purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m) and is, therefore, entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding in that, inter alia: (a) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser complied with the provisions in the Bidding Procedures Order; and (c) Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order.

J.      **Highest and Best Offer.** The Debtor conducted the sale process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The sale process was duly noticed and conducted in a non-collusive, fair and good faith manner in accordance with the Bidding Procedures Order and a reasonable opportunity was given to all interested parties to make a higher and better offer for the Purchased Assets. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's

business judgment.

L.    **Consideration.** The consideration under the Purchase Agreement constitutes reasonably equivalent value and fair consideration, as the case may be (as those terms are used in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the Bankruptcy Code). The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets. No other person, entity or group of entities has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtor's estate.

M.    **Free and Clear.** The Debtor is the sole and lawful owner of the Purchased Assets. The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets and vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all liens, claims (as defined in Section 101 of the Bankruptcy Code), encumbrances, obligations, and other interests of any kind or nature whatsoever, including but not limited to any interest of, inter alia, the Debtor's secured creditors, equipment lessors, and other claimants and/or creditors, as well as employees and any and all collective bargaining representatives thereof with respect to (a) any collective bargaining agreement to which Debtor is or was a party, (b) terms and conditions of employment, (c) compliance by, applications by, interpretations by, and practices of, the Debtor with respect to the foregoing agreement or agreements and/or terms and conditions of employment, and (d) any wage and benefit entitlements or claims thereto of any nature (including but not limited to accrued or accumulated vacation,  vacation carried over from year to year, sick leave, severance, separation pay and personal leave), accrued or not and however asserted, claimed or expected , and any interest of any New England Health Care Employee funds in unpaid

employer contributions (collectively, from "liens" through "contributions," the "Interests"). All Interests shall attach solely to the proceeds ultimately attributable to the Purchased Assets against, or in which, such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets, subject to any rights, claims and defenses which the Debtor or its estate, as applicable, may possess with respect thereto. No Interests may be asserted or remedy sought by any employee, representative thereof, federal, state or municipal administrative agency, or other person or entity against the Purchaser or any of the Purchaser's affiliates, including AN&RC, as defined hereinafter.

**N.   Free and Clear Findings Needed by Purchaser**. Purchaser asserts that it would not have entered into the Purchase Agreement and would not consummate the Transaction, thus adversely affecting the Debtor, its estate, its employees, the collective bargaining representative, the Funds referenced above and its creditors, if the sale of the Purchased Assets to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever, except as may be set forth herein, or if the Purchaser would, or in the future could, be liable for any of the Interests.

**O.   No Liability Findings Needed by Purchaser**. Purchaser asserts that it will not consummate the Transaction unless the Purchase Agreement specifically provides, and the Bankruptcy Court specifically orders, that neither Purchaser, its affiliates, members, shareholders, employees and/or other agents nor the Purchased Assets will have any liability whatsoever with respect  to, or be required to satisfy in any manner, whether at law or in equity,  whether in personam or in rem, whether by payment, setoff or otherwise, directly or indirectly, any claim or other Interest not otherwise explicitly assumed under the Purchase Agreement or this Order.

**P.   Satisfaction of 363(f) Standards**.  The Debtor may sell the Purchased Assets

free and clear of any Interests of any kind or nature whatsoever because, in each instance, one or

more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been

satisfied. Each entity with an Interest in or on the Purchased Assets to be transferred on the

Closing Date: (i) has, subject to the terms and conditions of this Order, consented to the

Transaction (including, the consenting secured creditors The State of Connecticut Department of

Social Services ("DSS"), RBS Citizens, National Association f/k/a Citizens Bank of

Connecticut f/k/a Citizens Bank ("RBS"), First Niagara Bank, N.A. as successor in interest to

NewAlliance Bank ("First Niagara"), and the Jewish Home Building Fund Corp. ("JHBFC")

(collectively, the "Consenting Secured Creditors")), or is deemed to have consented to the

Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed,

subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section

363(f)(2).  All holders of Interests are adequately protected by having their Interests attach solely

to the proceeds ultimately attributable to the Purchased Assets against or in which such Interests

are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in

the same order of priority, which such Interests now have against the Purchased Assets, subject

to any rights, claims and defenses which the Debtor or its estate, as applicable, may possess with

respect thereto.

   Q.   **No Fraudulent Transfer.** The Purchase Agreement was not entered into for the

purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the

laws of the United States, any state, territory, possession, or the District of Columbia. Neither

Debtor nor Purchaser is fraudulently entering into the transactions contemplated by the Purchase

Agreement, nor are the parties to the Purchase Agreement entering into such Purchase Agreement or the Transaction for purposes of avoiding or escaping any liability of the Debtor.

R.    **Not a Successor.** Neither Purchaser nor any of its affiliates, including Advanced Nursing & Rehabilitation Center of New Haven, LLC ("AN&RC"), (i) has a common identity of incorporators, members, directors or equity holders with the Debtor, (ii) is a successor to the Debtor for any purpose including but not limited to the National Labor Relations Act, the Employee Retirement Income Security Act, arbitral proceedings and federal, state and municipal wage and hour, wage and benefit payment, as to any accrued or accumulated vacation, vacation carried over from year to year, sick leave and other benefits, workplace standards and labor laws, or (iii) will be operating a business with the Purchased Assets which would render such operations a continuation of the Debtor's operations or business or would create or provide substantial continuity between it and the Debtor's business or operations. Except as expressly provided in the Purchase Agreement, transfer of the Purchased Assets to Purchaser shall not and will not subject Purchaser or any affiliate, including AN&RC, to any liability whatsoever with respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

S.    **Purchaser.** The word "Purchaser" shall be deemed to include AN&RC with respect to any provision of this Order which grants any rights, privileges or protections to Purchaser.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    **Motion is Granted.** The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled.** The objections filed by The United Illuminating Company (Doc. No. 115) and by Morrison Management Specialists, Inc. (Doc. No. 113), hereby are denied and overruled on the merits and with prejudice. The objection filed by the United States Department of Health and Human Services (Doc. No. 119) has been withdrawn.

3.    **Approval.** The Purchase Agreement and all of the terms and conditions thereto are hereby approved. The Debtor is hereby authorized and directed to (1) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms; (2) consummate the Transaction in accordance with the terms and conditions of the Purchase Agreement and the instruments contemplated by the Purchase Agreement; and (3) take all other and further actions as may be reasonably necessary to implement the Transaction.

4.    **Free and Clear** Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, the Debtor is authorized and directed, pursuant to Bankruptcy Code sections 105(a) and 363(f), to transfer the Purchased Assets to the Purchaser and, as of the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets, free and clear of all Interests, including the Interests of each of the respondents named in the caption of the Motion and the Interests of all persons and entities scheduled in the Debtor's Schedules of Assets and Liabilities as secured creditors, whether disputed or not, or as parties to leases with the Debtor, and including, but not limited to, any and all alleged Interests of personal injury, wrongful death, medical malpractice and other tort claimants, contract and quasi-contract claims, claims under any employee manual, handbook, collective bargaining agreement or workplace rules, grievances under any collective bargaining

agreement, arbitration decisions, persons seeking injunctive, special, extraordinary and/or equitable relief, claimants under any federal, state or local laws and regulations, claimants ( or representatives, collective bargaining representatives or administrative agencies on their behalf), seeking or to seek entitlement or damages for accrued or accumulated vacation, vacation carried over from year to year, and sick leave, administrative claimants, claimants under the Employee Retirement Income Security Act, claimants under the Workers Compensation Act, audits and citations under the Occupational Safety and Health Act, complainants to the Equal Employment Opportunity Commission and/or the Connecticut Commission on Human Rights and Opportunities, Charging Parties under the National Labor Relations Act, potential claimants, plaintiffs, potential plaintiffs, Debtor's current and former employees, collective bargaining representatives, the New England Health Care Employees Welfare Fund,  the New England Health Care Employees Pension Fund, the New England Health Care Employees Training Fund, those entities and parties referenced in section D above, claims seeking relief contrary to the Free and Clear status of the Purchased Assets, claims asserting that Purchaser or its business is a successor to Debtor for any purpose, and governmental agencies, including, but not limited, to the National Labor Relations Board and the federal and Connecticut Departments of Labor, including but not limited to the latter's Division of Wage and Workplace Standards, the Workers Compensation Commission, the Occupational Safety and Health Administration, and the Office of Federal Contract Compliance Programs.  Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, Purchaser shall take title free and clear of all of Seller's Liabilities, as defined in the Purchase Agreement, whether present or potential. All Interests, including Seller's Liabilities, shall attach solely to the proceeds

ultimately attributable to the Purchased Assets or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets, subject to any rights, claims and defenses which the Debtor or its estate, as applicable, may possess with respect thereto.

5.    Valid Transfer. As of the Closing Date, (a) the Transaction effects a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such assets free and clear of all Interests (except as may otherwise be set forth herein) and (b) this Purchase Agreement, the Transaction and the instruments contemplated hereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtor or its estate, or any other parties.

6.    **Further Actions by Holders of Claims or Other Interests.** Except as expressly permitted by the Purchase Agreement or by this Order, all persons and entities, including, but not limited to, the Debtor, its current or former employees (including, but not limited, to those seeking or to seek entitlement or money damages for any accrued or accumulated vacation, vacation carried over from year to year, and sick leave), collective bargaining representatives, grievants under any collective bargaining agreement, arbitrators and mediators, alternate dispute resolution entities, the various New England Health Care Employees funds as referenced above, personal injury, wrongful death, medical malpractice and other tort claimants, contract and quasi-contract claimants, claimants under any employee manual, handbook, workplace rules or past practices, those seeking injunctive, special, extraordinary and/or equitable relief, claimants under any federal, state or local laws and regulations, administrative claimants, claimants under the Employee Retirement Income

Security Act, claimants under the Workers Compensation Act, claimants under the

Occupational Safety and Health Act, complainants to the Equal Employment Opportunity

Commission and/or the Connecticut Commission on Human Rights and Opportunities,

Charging Parties under the National Labor Relations Act, potential claimants, plaintiffs,

potential plaintiffs, those entities and parties referenced in section D above, claims seeking

relief contrary to the Free and Clear status of the Purchased Assets, claims asserting that

Purchaser or its business is a successor to Debtor for any purpose, and governmental and

administrative agencies, including, but not limited to, the National Labor Relations Board and

the federal and Connecticut Departments of Labor, including but not limited to the latter's

Division of Wage and Workplace Standards, the Workers Compensation Commission, and the

Occupational Safety and Health Administration, and the Office of Federal Contract

Compliance Programs, debt security holders, equity security holders, governmental, tax and

regulatory authorities, secretaries of state, federal, state and local officials, lenders, other litigants,

lessors and  parties in possession of any of the Purchased Assets at any time, trade creditors

and all other persons or entities holding claims or other Interests of any kind or nature

whatsoever, including Seller's Liabilities, against or in the Debtor, in the Purchased Assets or

in the Debtor's interests in the Purchased Assets (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or

unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way

relating to, the Debtor, the Purchased Assets or the operation of the Debtor's business before the

Closing Date or with respect to any Interests arising out of or related to the Transaction, shall

be and hereby are forever barred and estopped from asserting any such Interests against

Purchaser, its officers, shareholders, directors, members, employees and representatives, its

affiliate, parent, subsidiary, divisional and control group entities, including AN&RC,  its property,

its successors and assigns, or the Purchased Assets. Following the Closing Date, no holder of

an Interest of any sort or nature shall interfere with Purchaser's title to, or use and enjoyment

of, the Purchased Assets based on or related to either such Interest or any actions that the

Debtor may take or have taken.

   7. **Release of Encumbrances.** Except as otherwise provided in this Order, this

Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any

kind or nature whatsoever existing as to the Purchased Assets or the Debtor prior to the Closing

Date have been unconditionally released, discharged and terminated and that the conveyances

described herein have been effected, (b) is an adjudication and declaration that all Interests of

record shall forthwith be removed and stricken as against the Purchased Assets and (c) shall be

binding upon and shall govern the acts of all entities, including, without limitation, all filing agents,

filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental departments, secretaries of state, federal, state,

and local officials, and all other persons and entities who may be required by operation of law,

the duties of their office, or contract, to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title

in or to any of the Purchased Assets.  If any person or entity that has filed or recorded

financing statements, mortgages, judgment liens, prejudgment remedies, attachments,

mechanic's liens, lis pendens, replevin orders or other documents or agreements evidencing

interests in the Debtor or in the Purchased Assets shall not have delivered to the Debtor prior

to the Closing Date, in proper form for filing and executed by the appropriate party or parties,

termination statements, instruments of satisfaction, releases of all Interests which the person or

entity has with respect to the Debtor or the Purchased Assets or otherwise, then Purchaser is hereby authorized to file, record and/or register a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtor and/or in the Purchased Assets of any kind or nature whatsoever and shall serve to release such Interest or Interests.

8.    **Executory Contracts.**  The Debtor's Medicare Provider Agreement shall be deemed assumed by the Debtor and assigned to AN&RC upon the Closing. AN&RC, following the assignment to it and subject to all of its and/or the Debtor's defenses, all of which are expressly reserved, shall be deemed to have agreed to assume, in accordance with the terms of such Provider Agreement, all obligations and liabilities of any kind which are required to be performed under such Provider Agreement after the Closing, except that the Debtor shall pay to HHS/CMS at Closing the full amount of any and all civil monetary penalties due to or assessed by HHS/CMS which are known to it at the time of Closing, including but not limited to the civil monetary penalty previously assessed against it in CMP Case No. 2011-01-LTC-097 in the amount of $2500 and due on July 10, 2011. Notwithstanding anything to the contrary herein, nothing in this Order or the Purchase Agreement shall modify, impair or affect the right of the United States Department of Health and Human Services, and its agency the Center for Medicare and Medicaid Services, to administer the Medicare Provider Agreement in accordance with all federal laws, regulations and policies relating to the Medicare program, including without limitation its right of recoupment, setoff and all other remedies.

9.    **No Successor Liability.**  Except as provided in paragraph 8 hereof, neither Purchaser, its affiliates, including AN&RC, nor its successors or assigns shall, as a result of the

consummation of the Transaction: (a) be a successor to the Debtor or its estate for the purpose of

any law, regulation or cause of action sounding in any body of law, including, but not limited

to, the National Labor Relations Act, the Employee Retirement Income Security Act, the Fair

Labor Standards Act, the Connecticut General Statutes, arbitral and mediation proceedings,

workers compensation acts, the Occupational Safety and Health Act, the various Executive

Orders administered by the Office of Federal Contract Compliance Programs, and federal, state

and municipal wage and hour, wage and benefit payment, workplace standards and labor laws

(including, but not limited to, for the purpose of bearing any liability or responsibility

whatsoever for any accrued or accumulated vacation, vacation carried over from year to year, or

sick leave); (b) have, de facto or otherwise, merged or consolidated with or into the Debtor or its

estate; or (c) be a continuation or substantial continuation of, or provide substantial continuity

between it and, the Debtor, the Debtor's business or operations or any enterprise of the Debtor,

including for any purpose referenced in (a) above.  Except with respect to the Debtor's Medicare

provider agreement,  neither the transfer of the Purchased Assets to Purchaser under the Purchase

Agreement nor the Purchaser's or AN&RC's operation of a business with the Purchased Assets

shall result in (i) Purchaser, its officers, shareholders, directors, members, employees and

representatives, its affiliate, parent, subsidiary, divisional and control group entities , including

AN&RC, members, or shareholders, or the Purchased Assets, having any liability or responsibility

for any claim against the Debtor or against an insider or co-debtor of the Debtor, including for any

purpose referenced in (a) above, (ii) Purchaser, its affiliates, including AN&RC, members or

shareholders, or the Purchased Assets, having any liability whatsoever with respect to any

Interests or any requirement or obligation to satisfy in any manner, whether at law or in equity,

whether by payment, setoff or otherwise, whether in personam or in rem, and whether directly or

indirectly, any Interests, including for any purpose referenced in (a) above, or (iii) Purchaser, its officers, shareholders, directors, members, employees and representatives, its affiliate, parent, subsidiary, divisional and control group entities, including AN&RC, members, or shareholders, or the Purchased Assets, having any liability or responsibility to the Debtor except as is expressly set forth in the Purchase Agreement.

10. **Binding on Successors**. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon the Debtor, its estate, all creditors of (whether known or unknown) and holders of equity interests in, the Debtor, the Purchaser and its respective affiliates, successors, designees and assigns, and any affected third parties, including, but not limited to, all persons asserting Interests in the Purchased Assets and all persons or entities referenced in Section D above, notwithstanding any subsequent appointment of any trustee of the Debtor under chapter 7 or 11 of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding. This Order and the Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and their respective successors and assigns.

11. **Bankruptcy Code Section 363(n).** Purchaser is acting and has acted without collusion and in good faith. The consideration provided by Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n) or otherwise.

12. **Good Faith.** Because Purchaser is acting and has acted without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m), the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction with Purchaser, unless such authorization is duly stayed pending

such appeal. Purchaser is a good faith purchaser of the Purchased Assets and is entitled to all of

the benefits and protections afforded by Bankruptcy Code section 363(m).

13.   **Fair Consideration.** The consideration provided by the Purchaser to the Debtor

pursuant to the Purchase Agreement for its purchase of the Purchased Assets constitutes

reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and the laws of the United

States, any state, territory, possession or the District of Columbia.

14.   **Retention of Jurisdiction.** This Court retains jurisdiction, pursuant to its

statutory powers under 28 U.S.C. § 157(b) and 1334, to, among other things, interpret,

implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith, including, but not limited to, retaining jurisdiction to (a) compel

delivery of the Purchased Assets to Purchaser; (b) compel delivery of the Purchase Price or

performance of other obligations owed to the Debtor; (c) interpret, implement and enforce the

provisions of this Order and the Purchase Agreement and (d) adjudicate, if necessary, any and

all disputes concerning or relating in any way to the Transaction.

15.   **Surrender of Possession.** All entities that on the Closing Date may be in

possession of some or all of the Purchased Assets in which the Debtor holds an interest hereby

are directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date.

16.   **Sale Proceeds.** Any and all valid and perfected Interests in Purchased Assets

shall attach solely to any proceeds of such Purchased Assets immediately upon receipt of such

proceeds by the Debtor (or any person acting on the Debtor's behalf) in the order of priority, and

with the same validity, force and effect which they now have against such Purchased Assets,

subject to any rights, claims and defenses which the Debtor or its estate, as applicable, may possess with respect thereto. Furthermore, the Debtor is authorized and directed, without any further order of this Court, to distribute the proceeds from the Closing as follows:

    (a) First, to pay the following costs of closing on or about the Closing Date:

        (i)     All state and municipal real estate conveyance taxes;

        (ii)    All personal property taxes and charges due for water and sewer use;

        (iii)   All recording fees;

        (iv)   The Break Up Fee, as that term is defined in the Purchase Agreement and the Bidding Procedures Order, if such becomes due and payable pursuant to the Bidding Procedures Order and the Purchase Agreement; and

        (v)    Such other amounts that the Secured Creditors collectively agree in writing may be paid from the proceeds of the Closing in order to effectuate the Closing.

    (b) Second, to transfer Four Hundred Thousand ($400,000) Dollars to the Debtor's counsel to be held by the Debtor's counsel in escrow for the benefit of DSS, and such other parties that hold an interest in such property subsequent in priority to DSS, in accordance with this Court's order(s) authorizing the use of cash collateral entered in this bankruptcy case, and subject to further order of this Court;

    (c) Third, to transfer Two Hundred and Fifty Thousand ($250,000) Dollars to the "Escrow Agent" (as that term is defined in the Purchase Agreement) to be held in escrow pursuant to Section 6f of the Purchase Agreement;

    (d) Fourth, to pay, to the extent of available proceeds after payment of the amounts required to be paid pursuant to subparagraph (a) through (c) above, the full amount of the allowed secured claim held by RBS in full and final satisfaction of such allowed secured claim (all rights to challenge such claim have been waived in accordance with prior orders of this Court and all right to assert an unsecured claim associated with any deficiency being expressly reserved);

    (e) Fifth, to pay, to the extent of available proceeds after payment of the amounts required to be paid pursuant to subparagraph (a) through (d) above, the full amount of the allowed secured claim held by First Niagara which amount, pursuant to the consent and waiver of First Niagara, shall not exceed Three Hundred and Fifty Thousand ($350,000) Dollars, in full and final satisfaction of such allowed secured claim;

    (f) Sixth, to pay, to the extent of available proceeds after payment of the amounts required to be paid pursuant to subparagraph (a) through (e) above, the full

amount of the allowed secured claim held by the JHBFC; and, finally

(g) Seventh, to transfer to the Debtor's counsel to be held in escrow until further order of this Court any proceeds of the Sale remaining after the payment of the amounts set forth in subparagraph (a) through (f) above.

17.

In consideration of and in settlement of any and all objections that the Official Committee of Unsecured Creditors (the "Committee") may, at any time, have to the Debtor's motion for an order authorizing sale procedures and granting other related relief and to the Sale Motion (including, without limitation, paragraph 16(d) of this Order), whether or not filed or asserted (the "Committee Objections"), the Debtor's first priority secured creditor, RBS, the Committee, and the JHBFC have agreed ("Carve-Out Agreement"), and this Court hereby ORDERS that:

(a) The Committee, on behalf of its constituents, shall be entitled to receive from the sale proceeds actually paid to RBS on account of its first priority secured claim pursuant to this Order, the amount of $211,000, $25,000 of which shall be allocated to payment of the allowed fees and expenses of the Committee's counsel and the balance of which shall be held in escrow by counsel to the Committee for the benefit of, and distributed to, the unsecured creditors represented by the Committee pursuant to further order of the Court; and

(b) The Committee, on behalf of itself, its constituents and their respective successors and assigns, waives, to the extent not already waived, abandoned or foreclosed, any right to challenge or object to: (i) the amount of RBS's claim (including, without limitation, interest, default interest, costs, fees and professional fees accrued or accruing in connection therewith), (ii) the validity, enforceability, priority or perfection of the liens and security interests securing RBS's claim, or (iii) the distribution of sale proceeds to RBS in accordance with this Order; and

(c) JHBFC, which asserts a claim in the amount of $1,406,164.38 against the Debtor by reason of monies loaned to the Debtor and secured, pre-petition by a mortgage, and which claim, after payment of the amounts required to be paid pursuant to the preceding paragraph 16, if any, will be rendered unsecured by reason of there being no further collateral to secure said mortgage, waives the balance of such claim after payment of the amounts required to be paid to the JHBFC pursuant to the preceding paragraph 16 (including, but not limited to, the right to receive the balance of funds to be distributed from the Environmental Escrow as that term is defined in the

Purchase Agreement), if any, and waived further any right to be paid from the Carve-Out Agreement or any other monies of the Debtor's estate upon the additional condition that the funds paid to the Committee by RBS shall be used only for payment of the fees and expenses of the Committee's counsel and as a dividend to allowed unsecured creditors.

18.    **Non-material Modifications.** The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate. In the event that any modification, amendment or supplement affects the recovery of any creditor referenced in paragraph 16 hereof, written consent of such creditor shall also be required.

19.    **Subsequent Plan Provisions.** Nothing contained in any chapter 11 plan confirmed in the Debtor's case or in any order confirming any such plan or in any other order in this chapter 11 case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order.

20. **Failure to Specify Provisions.** The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.

21. **Non-Severable.** All of the provisions of this Order are nonseverable and mutually

dependent.

22. **No Stay of Order.** Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall not be stayed for any period of time after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

23. **Preservation of Certain Records.** The Debtor's estate will have reasonable access to the Debtor's books and records to administer its bankruptcy case upon reasonable notice to Purchaser, as more fully set forth in the Purchase Agreement.

24. **Further Assurances.** From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transaction.

Dated: July 14, 2011                                        BY THE COURT

Lorraine Murphy Weil
**Lorraine Murphy Weil**
**Chief United States Bankruptcy Judge**